# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
## Opinion on Remand - July 10, 2014 Session

## FIRST COMMUNITY BANK, N.A. v. FIRST TENNESSEE BANK, N.A., ET. AL.

### Appeal from the Circuit Court for Knox County
### No. 347511   Hon. Wheeler A. Rosenbalm, Judge

---

### No. E2012-01422-COA-R3-CV-FILED-AUGUST 20, 2014

---

Plaintiff brought this action against Defendants for fraud, constructive fraud, negligent misrepresentation, civil conspiracy, unjust enrichment, and violation of the Tennessee Securities Act, codified at Tennessee Code Annotated section 48-1-101, et seq. The claims arose out of the purchase of asset-backed securities that were later deemed unmarketable, causing a significant financial loss to Plaintiff. Defendants filed motions to dismiss pursuant to Rule 12.02(6), arguing that the claims were untimely, that Plaintiff failed to plead its claims with particularity, and that the losses were caused by general market conditions. Nonresident Defendants also objected to the court's personal jurisdiction. The trial court dismissed the complaint. Plaintiff appealed the dismissal to this court, and we affirmed the dismissal against Nonresident Defendants for lack of personal jurisdiction but reversed the dismissal for failure to state a claim as to the remaining defendants. In so holding, this court found that consideration of matters outside the pleadings pertaining to the running of the statute of limitations converted the motions to dismiss into one for summary judgment, thereby requiring remand of the entire case for further discovery. The remaining defendants filed an application for permission to appeal. The Tennessee Supreme Court granted the application and remanded the case for "consideration of the trial court's alternative basis of dismissal of [the] complaint, i.e., the failure to state a cause of action or state a claim for which relief can be granted (other than on the basis of the running of the applicable statutes of limitations or repose)." Upon remand, we reverse the decision of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, J., and D. KELLY THOMAS, JR., SP.J.,[1] joined.

Lawrence F. Giordano and Linda J. Hamilton Mowles, Knoxville, Tennessee, and Daniel P. Lynch and William J. Wyrick, Cranberry Township, Pennsylvania, for the appellant, First Community Bank f/k/a First Community Bank, N.A.

Mark D. Griffin, Lori H. Patterson, and Kristine L. Roberts, Memphis, Tennessee, for the appellees, First Tennessee Bank, N.A. d/b/a FTN Capital Markets and FTN Financial Securities Corporation.

Thomas K. Potter, III and Lauren E. Kilgore, Nashville, Tennessee, for the appellee, Morgan Keegan & Company, Inc.

H. Frederick Humbracht, Jr., Nashville, Tennessee, and Roger A. Cooper and Jared M. Gerber, New York, New York, for the appellee, Bank of America Corporation as successor in interest to Merrill Lynch, Pierce, Fenner & Smith, Inc.

John A. Lucas and Lane E. McCarty, Knoxville, Tennessee, and Michael T. Reynolds and Kevin J. Orsini, New York, New York, for the appellees, J.P. Morgan Securities, LLC, individually and as successor in interest to Bear Stearns & Company, Inc.

John E. Winters and John T. Johnson, Knoxville, Tennessee, Steven L. Polk and Bryan M. Ward, Atlanta, Georgia, for the appellee, SunTrust Robinson Humphrey, Inc. f/k/a SunTrust Capital Markets, Inc.

James A. Holifield, Jr., Knoxville, Tennessee, and Eric R. Levine and Eric P. Heichel, New York, New York, for the appellee, Keefe, Bruyette & Woods, Inc.

**OPINION**

**I. BACKGROUND**

First Community Bank ("Plaintiff")[2] is a banking and financial services company that is incorporated in Virginia. Plaintiff has more than 50 financial centers located in various states, including Virginia, West Virginia, North Carolina, and Tennessee. In 2003, Plaintiff

---

[1] Judge on the Court of Criminal Appeals sitting by special designation.

[2] Plaintiff is a wholly owned subsidiary of First Community Bancshares, Inc.

began investing in asset-backed securities, namely collateralized debt obligations ("CDOs") and residential mortgage-backed securities ("RMBSs"). CDOs are an amalgam of different forms of debt that are pooled together, regrouped into classes ("tranches"), assigned a rating, and marketed to investors. Ideally, investors who purchase a tranche in a CDO receive a steady influx of payments and eventually recoup the investment in addition to a profit.

In 2000, FTN Financial Securities Corporation ("FTN"), a wholly owned subsidiary of First Tennessee Bank, N.A. ("FTB"), along with Keefe, Bruyette & Woods, Inc. ("KBW") developed pooled trust preferred CDOs, entitled Preferred Term Securities ("PreTSLs"). PreTSLs were comprised of portfolios of debt issued by banks, insurance companies, and real estate investment subsidiaries. FTN and KBW formed entities ("PreTSL Entities") to serve as the issuer or co-issuer of the asset-backed securities. From 2003 to 2007, Plaintiff purchased notes in varying tranches in seven of the PreTSLs formed by FTN and KBW.

In June 2007, Plaintiff purchased notes in the A-3L tranche of a CDO, entitled Soloso 2007-1 ("Soloso"). The next day, Plaintiff purchased additional notes from the same tranche. Bear Stearns & Company, Inc. ("Bear Stearns") and SunTrust Robinson Humphrey, Inc. ("SunTrust") structured Soloso and created special purpose entities, Soloso CDO 2007-1, Ltd. and Soloso CDO 2007-1, Inc. ("Soloso Entities"), to serve as issuer and co-issuer of Soloso. One month later, Plaintiff purchased notes in the D tranche of a CDO, entitled Trapeza CDO XIII ("Trapeza"). J.P. Morgan Securities, LLC ("JP Morgan"),[3] along with Morgan Keegan & Company, Inc. ("Morgan Keegan") structured Trapeza and created special purpose entities, Trapeza CDO XIII, Ltd. and Trapeza CDO XIII, Inc. ("Trapeza Entities"), to serve as issuer and co-issuer of Trapeza. Trapeza Capital Management, LLC ("TCM") served as a collateral manager and assisted in the selection and management of the securities.

Unlike CDOs, RMBSs are securities "backed by a pool of residential mortgage loans" and grouped into tranches. The recoupment of the purchase price and any profit are dependent upon the viability of each underlying mortgage's rates of return and default. On December 22, 2006, Plaintiff purchased notes in the A-9 tranche of Residential Asset Securitization Trust 2006-A9CB ("RAST"), which was backed by 2,016 mortgages. The mortgages were acquired by IndyMac Bank, F.S.B. ("Indy")[4] and marketed by Indy and Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch").

Each sale, whether for a CDO tranche or the RMBS tranche, was conditioned upon the receipt of a minimum rating by one of three rating organizations, Moody's Investor

---

[3]Formally known as J.P. Morgan Securities, Inc.

[4]OneWest Bank, F.S.B. as successor in interest to Indy has since been removed as a party.

Services, Inc. ("Moody's"); Fitch, Inc. doing business as Fitch Ratings ("Fitch"); and The McGraw-Hill Companies, Inc. ("McGraw-Hill") doing business as Standard & Poor's Ratings Services ("S&P").[5] The products were rated as follows:

| Product | Purchase Price | Moody's | Fitch | S&P |
| --- | --- | --- | --- | --- |
| PreTSL X | $10,000,000 | A2 | A | No rating |
| PreTSL XII | $10,000,000 | A2 | A | No rating |
| PreTSL XII | $10,417,695.61 | A2 | A | No rating |
| PreTSL XIV | $9,335,790 | A2 | A | No rating |
| PreTSL XVI | $4,119,326.67 | A2 | A | No rating |
| PreTSL XXIII | $8,180,712.21 | A3 | A | No rating |
| PreTSL XXII | $12,785,606.03 | A3 | A- | No rating |
| PreTSL XXVI | $7,000,000 | A3 | A- | No rating |
| Trapeza | $20,000,000 | No rating | A- | No rating |
| Soloso | $18,400,000 | A2 | A- | No rating |
| RAST | $25,000,000 | Aaa | No rating | AAA |

Each product received the required minimum rating. Specifically, the ratings from Moody's, Fitch, and S&P (collectively "Rating Agencies") represented that each security was "upper-medium grade" and "subject to low credit risk" according to Moody's, of "high credit quality" and "low default risk" with a "strong" capacity for repayment according to Fitch, and of "[e]xtremely strong capacity to meet financial commitments" according to S&P.

In order to finance the transactions, Plaintiff borrowed from other sources by aligning the repayment terms with the anticipated income of principal and interest from its newly-purchased investments. In August 2008, Moody's downgraded the rating for a number of Plaintiff's investments. "Beginning in the fourth quarter of 2008, some" of the investments "began to fail certain coverage tests" and began to "pay in kind, crippling their fair market value." Plaintiff eventually sold its CDOs. The following table represents Moody's revised ratings and sale price, if applicable:

---

[5]S&P was not registered as a nationally recognized statistical rating organization until September 2007.

| Product | Purchase Price | Sale Price | Revised Rating |
|---|---|---|---|
| PreTSL X | $10,000,000 | $1,106,000 | Ca |
| PreTSL XII (both products) | $20,417,695.61 | $3,262,000 | Ca |
| PreTSL XIV | $9,335,790 | $1,314,900 | Ca |
| PreTSL XVI | $4,119,326.67 | $3,000.41 | Ca |
| PreTSL XXII | $12,785,606.03 | $238,750 | Ca |
| PreTSL XXIII | $8,180,712.21 | $990,000 | C |
| PreTSL XXVI | $7,000,000 | $2,499 | C |
| Trapeza | $20,000,000 | $2,500 | Not rated by Moody's |
| Soloso | $18,400,000 | $2,500.56 | C |
| RAST | $25,000,000 | | A2 |

Plaintiff retained its investment in RAST, despite a significant downgrade in its rating and breaches in various "coverage tests." In total, Plaintiff lost approximately $100,000,000 as a result of the downgrade in the overall value of its CDOs. In order to recover from the massive loss, Plaintiff cut shareholder dividends, froze salaries, and scaled back plans for expansion and growth to the detriment of its shareholders, employees, and customers.

On September 15, 2011, Plaintiff filed a 207-page complaint, alleging fraud and negligent misrepresentation against the Rating Agencies; the PreTSL Entities, the Soloso Entities, and the Trapeza Entities (collectively "Issuing Entities"); and FTN, KBW, Morgan Keegan, TCM, SunTrust, Bank of America Corporation ("BOA") as successor in interest to Merrill Lynch,[6] and JP Morgan, individually and as successor in interest to Bear Stearns[7] (collectively "Placement Agents").[8] Plaintiff brought claims for violation of the Tennessee Securities Act ("TSA") and unjust enrichment against Placement Agents and Issuing Entities.

---

[6]BOA purchased Merrill Lynch in 2008.

[7]JP Morgan purchased Bear Stearns in 2008.

[8]Originally, Plaintiff filed claims against S&P for each transaction. All but one of the claims were eventually dismissed in recognition of the fact that S&P only rated RAST.

In general, Plaintiff alleged that Placement Agents and Issuing Entities worked with Rating Agencies in producing products that appeared marketable and that Rating Agencies were retained and compensated based upon the rating it provided. Plaintiff claimed that Placement Agents and Issuing Entities then knowingly provided a misleading rating to secure the sale of the products.

In support of its claim for fraud, Plaintiff claimed that Placement Agents, Issuing Entities, and Rating Agencies (collectively "Defendants") "made materially false and misleading representations and omissions" relative to the products, the underwriting and rating process, the adequacy of the credit support and enhancement available, conflicts of interest with Rating Agencies, and whether Rating Agencies had "sufficiently reliable facts and sufficiently reliable models on which to assign" ratings. Plaintiff also specifically alleged that those involved in the PreTSL and Soloso transactions made materially false and misleading representations concerning the subscription of the products. Plaintiff asserted that Defendants "made the representations and omissions either knowing of their falsity or with recklessness as to whether the representations were false," that its reliance upon the representations and omissions was reasonable and justifiable, and that it suffered damages as a result of the "fraudulent conduct, misrepresentations, and omissions."

In support of its claim for negligent misrepresentation, Plaintiff alleged that Placement Agents and Issuing Entities "supplied materially false, faulty and misleading information" in an attempt to guide Plaintiff in its business transactions, that Defendants "failed to exercise reasonable care in obtaining and communicating the information" concerning the quality of the notes, that it was foreseeable, reasonable, and justifiable that Plaintiff would rely on the information, and that Plaintiff suffered damages as a result of its reliance. Plaintiff further alleged that Rating Agencies also "supplied materially false, faulty and misleading" information and credit ratings, that Rating Agencies "held special expertise" and "had a duty to conduct a reasonable investigation of the truthfulness of its representations regarding" the ratings, that it was foreseeable, reasonable, and justifiable that Plaintiff would rely on the information, and that Plaintiff suffered damages as a result of its reliance.

In support of its TSA claim against Placement Agents and Issuing Entities, Plaintiff alleged that Placement Agents and Issuing Entities

> (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit[.]

Plaintiff asserted that it suffered damages as a result of the "false and fraudulent conduct, misrepresentations, and omissions."

In support of its claim for unjust enrichment, Plaintiff alleged that it conferred a benefit upon Placement Agents and Issuing Entities for the purchase of the products and that they appreciated and accepted the benefit "under such circumstances that it would be inequitable and unjust" to allow retention of "the benefit without payment of value."

SunTrust and BOA filed motions to sever. Defendants sought dismissal, alleging that Plaintiff had failed to state a claim upon which relief could be granted because the claims were time-barred, because Plaintiff failed to plead its fraud-based claims with particularity, because Plaintiff failed to identify a material misstatement upon which it reasonably relied, because the securities were not purchased in Tennessee, and because the losses were caused by general market conditions. Placement Agents claimed they had not sold the securities or issued the offering materials. BOA argued that Plaintiff had not pled any facts concerning successor liability. Rating Agencies asserted that Plaintiff's claims were preempted by the Credit Rating Agency Reform Act of 2006 ("the CRARA") and that the ratings were protected by the First Amendment to the United States Constitution.

Issuing Entities, Rating Agencies, and TCM ("Nonresident Defendants") asked the court to dismiss Plaintiff's complaint for lack of personal jurisdiction, alleging that Plaintiff was a Virginia corporation and that Plaintiff's cause of action did not arise from and was not related to any activities that occurred in Tennessee. Nonresident Defendants attached affidavits in support of each motion.

On February 16, 2012, Plaintiff filed a motion for leave to take limited discovery on the issue of personal jurisdiction and sought to hold oral arguments in abeyance. Plaintiff filed an amended complaint, along with interrogatories, requests for production of documents, and notices of deposition. Defendants objected to the discovery requests and filed renewed motions to dismiss. Nonresident Defendants either filed motions to quash or requested a protective order to prevent discovery. The rest of the defendants objected to any discovery that did not pertain to jurisdictional issues and sought timely oral argument on their respective motions to dismiss.

Plaintiff's amended complaint, which spanned 260 pages, added claims of civil conspiracy and constructive fraud against Defendants and a claim of unjust enrichment against Rating Agencies for the payment received for rating each product. Plaintiff alleged that Defendants were guilty of civil conspiracy because they "omitted numerous material facts in connection with the issuance, rating, marketing and sale" of each product "for the purpose of defrauding" Plaintiff and others. Plaintiff relied upon the "material

misrepresentations and omissions made by" those "acting in concert and in furtherance of the conspiracy" for each product. Plaintiff asserted that Defendants were guilty of constructive fraud because they "owed a legal and/or equitable duty" to Plaintiff "to provide accurate and complete information orally and in written communications" but that each defendant "made the false representations and omissions knowing they were not accurate or complete." Relative to the unjust enrichment claim, Plaintiff alleged that it conferred "an indirect benefit in the amount of the fees paid to [] Rating Agencies out of [Plaintiff's] purchase price proceeds" and that Rating Agencies appreciated and accepted the benefit under "circumstances that it would be inequitable and unjust for it to retain the benefit without payment."

Plaintiff also added general allegations and facts in its amended complaint. Plaintiff claimed that FTN and KBW repurchased investments from investors and then sold them in order to create the appearance of short-term profits and secondary market liquidity. Plaintiff relied upon KBW's representations of secondary market liquidity in making its purchases.

In the renewed motions to dismiss, Defendants asserted that Plaintiff failed to state any claims upon which relief could be granted. Defendants responded to the new claims of civil conspiracy by asserting that Plaintiff failed to plead sufficient facts constituting tortious conduct or a relationship that would support a conspiracy claim. Defendants responded to the new claim of constructive fraud by asserting that Plaintiff failed to plead sufficient facts demonstrating that they owed Plaintiff a legal or equitable duty, that they misrepresented or concealed material facts, or that Plaintiff relied upon any alleged misrepresentations or omissions. Nonresident Defendants also renewed their objections to personal jurisdiction and objected to Plaintiff's new claim of conspiracy jurisdiction.

Plaintiff filed briefs in opposition to the motions to dismiss, asserting that dismissal was inappropriate at this stage of the proceedings. Plaintiff attached affidavits in support of the opposition to the motions to dismiss for lack of personal jurisdiction. Following a hearing on the various motions before the trial court, the court stated,

[P]laintiff has furnished some affidavits in response to the [motions to dismiss for lack of jurisdiction], but the [c]ourt is constrained to conclude that [] Plaintiff has not established such a prima facie case that it should be permitted at this point to inquire by discovery further about the personal jurisdiction defense, and so this [c]ourt most respectfully denies that implicit request which is in [P]laintiff's motion for a status conference and sustains those motions filed by defendants for either protective orders or to quash that issue.

The court ultimately held that it did not have personal jurisdiction over Nonresident Defendants. Applying Tennessee law, the court found that Plaintiff's claims were time-barred. In finding that the claims were time-barred, the trial court stated,

> [In 2006, Congress] passed comprehensive legislation [concerning rating agencies]; in 2007[,] there was considerable public notoriety about the role of rating agencies and whether or not they were laboring under conflicts of interest and engaged in other wrongdoing; [] the rating agencies in this case [re-rated or issued downgrades for Plaintiff's securities]; [in 2007,] the Wall Street Journal wrote at length about the very problems that are the basis of [this] lawsuit; and [in July 2008, Congress] released a report . . . that called attention to all of these problems. And I just really cannot see how anybody that was in charge of investments at a banking institution could have not been aware of all of these problems by at least July of 2008.

The trial court ruled that Plaintiff filed suit "more than two years and indeed more than three years after [Plaintiff] knew or should have known these problems" and that "the pleadings in this case reveal[ed] that the common-law actions and the statutory action are barred by the two-year and three-year statute of limitations." The court also held that any statutory law claims relating to the 2003 PreTSL transactions were barred by TSA's five-year statute of repose. In the event of further appellate review, the court found that Plaintiff failed to plead its fraud claims with particularity and that Plaintiff failed to state a claim for negligent misrepresentation, constructive fraud, violations of the TSA, and unjust enrichment. The court further found that the non-fraud claims against Rating Agencies were preempted by the CRARA. The court declined to rule on the issue of loss causation.

Plaintiff appealed to this court. We affirmed the dismissal of the complaint against Nonresident Defendants but reversed the dismissal of the complaint against the remaining defendants, holding that consideration of matters outside the pleadings pertaining to the running of the statute of limitations converted the motions to dismiss into one for summary judgment, thereby requiring remand of the entire case for further discovery. Plaintiff filed an application for permission to appeal the dismissal for lack of personal jurisdiction, while the remaining defendants filed an application for permission to appeal the reversal of the dismissal. Morgan Keegan filed a separate application for permission to appeal. The Tennessee Supreme Court denied the application filed by Plaintiff but granted the applications filed by the remaining defendants and Morgan Keegan and remanded the case for "consideration of the trial court's alternative basis of dismissal of [the] complaint, i.e., the failure to state a cause of action or state a claim for which relief can be granted (other than on the basis of the running of the applicable statutes of limitations or repose)."

## II. ISSUE

Having been directed to consider a limited issue upon remand, we will simply restate the issue as phrased by the Tennessee Supreme Court:

> Whether the trial court erred in dismissing the complaint for "failure to state a cause of action or state a claim for which relief can be granted (other than on the basis of the running of the applicable statutes of limitations or repose)."[9]

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof." *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). In determining whether the trial court erred in granting the motion to dismiss, we "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Id.* The complaint "should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of [the] claim that would warrant relief." *Id.* The trial court's grant of the motion to dismiss is subject to a de novo review with no presumption of correctness because we are reviewing the trial court's legal conclusion. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## IV. DISCUSSION

The remaining defendants argue that dismissal was appropriate pursuant to Rule 12.02(6). They assert that Plaintiff failed to state its claims with particularity and merely resorted to a group pleading tactic without identifying a misrepresentation made by each defendant. They further assert that the facts as alleged were not capable of warranting relief.

Rule 8.01 of the Tennessee Rules of Civil Procedure provides,

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain: (1) a short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for judgment for the relief the pleader seeks.

---

[9]Plaintiff's argument that this court need only reaffirm its prior ruling with slightly more specificity is without merit given our Supreme Court's instruction to address this limited issue upon remand.

-10-

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Tenn. R. Civ. P. 9.02. "A claim of fraud is deficient if the complaint fails to state with particularity an intentional misrepresentation of a material fact." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 41 (Tenn. Ct. App. 2006). Nevertheless, "[e]ach averment of a pleading shall be simple, concise and direct." Tenn. R. Civ. P. 8.05(1). In keeping with that directive, "Tennessee follows a liberal notice pleading standard." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011).

"Our state's notice pleading regime is firmly established and longstanding; this Court recognized well before the Tennessee Rules of Civil Procedure were adopted that '[t]he object and purpose of any pleading is to give notice of the nature of the wrongs and injuries complained of with reasonable certainty, and notice of the defenses that will be interposed, and to acquaint the court with the real issues to be tried.'" *Id.* (quoting *Hammett v. Vogue, Inc.*, 165 S.W.2d 577, 579 (Tenn. 1942)). "To be sufficient and survive a motion to dismiss, a complaint must not be entirely devoid of factual allegations." *Id.* at 427. "Moreover, courts are not required to accept as true assertions that are merely legal arguments or 'legal conclusions' couched as facts." *Id.* (quoting *Riggs v. Burson*, 941 S.W.2d 44, 47-48 (Tenn. 1997)). "When a complaint fails to comply with Rule 8 [or 9.02], it is subject to dismissal by grant of a motion to dismiss for failure to state a claim upon which relief can be granted, as provided by Tennessee Rule of Civil Procedure 12.02(6)." *Webb*, 346 S.W.3d at 425-26.

Plaintiff raised claims of fraud, constructive fraud, negligent misrepresentation, civil conspiracy, unjust enrichment, and violations of the Tennessee Securities Act ("TSA"). We will address the sufficiency of each claim, in turn. We will also address BOA's claim that Plaintiff failed to adequately plead successor liability.

*Sufficiency of each claim*

Fraud

Under Tennessee law, in order to prevail on a claim based on fraud, a plaintiff must show the following: (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation's falsity (i.e., it was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity); (3) the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, the misrepresentation "must embody a promise of future action without the present intention to carry out the promise." *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (citing *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).

While Plaintiff states its claims of fraud against each defendant individually, the allegations are undoubtedly similar and in some cases, a verbatim recitation of the claim against the preceding defendant. In pertinent part, Plaintiff alleged that each defendant made materially false and misleading representations regarding:

> the risk associated with the [product], the thoroughness of the underwriting and rating process, the adequacy of credit support/enhancement, whether the Rating Agencies had sufficiently reliable facts and sufficiently reliable models on which to assign their ratings, inadequate historical assumptions, conflicts of interest involving the Rating Agencies, and the soundness of investment in [the product] generally.

Plaintiff additionally alleged that FTN, FTB, KBW, and JP Morgan also made materially false and misleading representations regarding:

> an alleged "oversubscription" of the [product] among institutional investors[.]

Plaintiff continued that each defendant "intentionally made the false representations and concealed material facts" either orally and/or in written communications, namely the materials prepared and distributed with each product. Plaintiff also alleged that

> [Each defendant] made the false representations and concealments in concert with the other Defendants either knowing of their falsity or with recklessness as to whether the representations were false.

> With respect to the credit ratings, upon information and belief, [each defendant] and the Rating Agencies worked together to structure the tranches and assign them credit ratings.

> [Each defendant] obtained the ratings for the [product] from the Rating Agencies and then provided the knowingly misleading investment grade credit ratings to First Community.

> The ratings constituted a representation of fact that [each defendant] and the Rating Agencies had sufficiently reliable facts to provide those ratings.

> To the extent that [each defendant] may claim the ratings are opinions, the ratings were nonetheless fraudulent because [each defendant] did not genuinely and reasonably believe them and they were without basis in fact.

[Each defendant] had the motive and opportunity to commit fraud, as pled with particularity above.

[Each defendant] made the aforesaid materially misleading statements and omissions, with regard to both the credit ratings and the soundness of the products, with the intent that First Community rely on the statements and for the purpose of inducing First Community to buy [the product].

First Community reasonably and justifiably relied on [the] materially misleading statements and omissions, made both verbally and in the offering documents and ratings, because they went to the core of First Community's investment decision regarding the [product].

The complaint goes on to allege that Plaintiff suffered damages as a result of the "fraudulent conduct, misrepresentations, and omissions" by the remaining defendants.

Citing *Strategic Capital Resources, Inc. v. Dylan Tire Industries, LLC*, 102 S.W.3d 603, 611 (Tenn. Ct. App. 2002), the remaining defendants claim that Plaintiff was required to identify "each alleged misrepresentation and [tie] it to a particular defendant, at a particular place, and at a particular time." In affirming the trial court's dismissal of the complaint for failure to plead fraud claims with particularity, the court in *Strategic* stated,

The chancellor dismissed the fraud claim because of the failure to comply with the requirements of Rule 9.02, Tenn. R. Civ. P., that "the circumstances constituting fraud or mistake shall be stated with particularity." There is a companion rule set forth in Rule 8.06 that all pleadings shall be construed so as to do substantial justice. *See Ezell v. Graves*, 807 S.W.2d 700 (Tenn. Ct. App. 1990); *cf. Sullivant v. Americana Homes, Inc.*, 605 S.W.2d 246 (Tenn. Ct. App. 1980). In *City State Bank v. Dean Witter Reynolds*, 948 S.W.2d 729 (Tenn. Ct. App. 1996), the court found the complaint sufficient where it "specifically identifies the time and place of each alleged false representation, and identifies the manner in which each representation was deemed to have been fraudulent." 948 S.W.2d at 738.

We think that the complaint does fail the particularity test. An inspection of the complaint shows that the allegations are only general and that no particular defendant is identified as the one making the false and misleading statements. *At a minimum the actors should be identified and the substance of each statement should be pled.* We think the fraud claims were properly dismissed.

-13-

102 S.W.3d at 611 (emphasis added). While the court referenced a decision in which the complaint was upheld because it identified the time and place of each representation, the court stopped short of issuing any new particularity requirements and merely held that the plaintiff failed to identify the actors and the substance of each statement as required. This standard is in keeping with the particularity requirement and cases construing the requirement. The Committee Comments to Tenn. R. Civ. P. 9.02 explain that:

> The [particularity] requirement . . . is not intended to require lengthy recital of detail. Rather, the Rule means only that general allegations of fraud and mistake are insufficient; the pleader is required to particularize but by the 'short and plain' statement required by Rule 8.01.

This court has previously held that "[t]he particularity requirement means that any averments sounding in fraud (and the circumstances constituting that fraud) must relat[e] to or designat[e] one thing singled out among many." *Diggs v. Lasalle Nat'l Bank Ass'n*, 387 S.W.3d 559, 564 (Tenn. Ct. App. 2012) (internal quotation and citation omitted). "[P]articularity in pleadings requires singularity – of or pertaining to a single or specific person, thing, group, class, occasion, etc., rather than to others or all." *Id.* (citing *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525 (Tenn. Ct. App. 2012)).

Here, the complaint contains a general accounting of each purchase and the role each defendant played in securing the purchases over the course of several years. The transactions at issue and the alleged misrepresentations were remarkably similar in nature. The similarity of each claim was not surprising given the companies involved and the economic climate at the time of the transactions. A review of the complaint reveals that Plaintiff identified the actors and the substance of each admittedly similar statement. With these considerations in mind, we hold that the complaint was sufficient to survive a motion to dismiss for failure to state its fraud-based claims with particularity pursuant to Rule 9.02. Likewise, a review of the remainder of the complaint reveals that the complaint was sufficient to survive a motion to dismiss for failure to state the remaining claims with particularity pursuant to Rule 8.01 and the corresponding notice pleading standard.

Citing *Ohio Police & Fire Pension Fund v. Standard & Poor's Financial Services*, LLC, 700 F.3d 829, 842 (6th Cir. 2012), the remaining defendants further assert that the facts, as alleged, were not capable of warranting relief because the alleged misstatements were opinions, not actionable misrepresentations. They are correct in asserting that the misrepresentation must relate to an existing or past fact and cannot be a mere statement of opinion, commonly referred to as "puffing" in order to make a sale. *See Harrison v. Avalon Props.*, LLC, 246 S.W.3d 587, 601 (Tenn. Ct. App. 2007) (citing *Ladd v. Honda Motor Co.,*

*Ltd.*, 939 S.W.2d 83, 97 (Tenn. Ct. App. 1996)). However, such was not the case here when Plaintiff alleged that the remaining defendants worked with Rating Agencies to structure the tranches and that each defendant "did not genuinely and reasonably believe" the ratings, which were "without basis in fact." "In such a case, the misrepresentation is not the opinion, but is the speaker's assertion that he or she believes the opinion, which is a question of existing or pre-existing fact." *Ohio Police*, 700 F.3d at 842. Plaintiff alleged as much in the complaint. Accordingly, we conclude that the claim was sufficient to survive a motion to dismiss on this ground.

Citing *Green v. Green*, 293 S.W.3d 493 (Tenn. 2009), the remaining defendants assert that Plaintiff's claims of fraud must fail because the alleged misstatements and omissions were not material given the total mix of information available to Plaintiff, a sophisticated investor. In determining whether a particular representation or omission is material, Tennessee courts use an objective test. *Green*, 293 S.W.3d at 511. The test, which was accepted by our Supreme Court, provides

> A misstatement of omitted fact is material if there is a substantial likelihood that a reasonable purchaser or seller would consider it important in deciding whether or not to purchase or sell. It does not require proof of a substantial likelihood that disclosure of the misstatement or omitted fact would have caused the reasonable investor not to purchase or sell the security. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the misstatement or omitted fact would have assumed actual significance in the deliberations of the reasonable investor. Put another way, there must be a substantial likelihood that the disclosure of the misstatement or omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.

*Id.* at 512. (citations omitted). In light of the fact-specific nature of a materiality finding, the United States Supreme Court expressed "wariness about applying bright-line rules" in such cases, causing courts to treat questions of materiality as factual issues best left to the jury. *Id.* at 516-17. In this case, at this stage of the proceedings, presuming all factual allegations to be true and giving Plaintiff the benefit of all reasonable inferences as we are constrained to do, it does not yet appear that Plaintiff will be unable to prove the materiality of the statements as alleged. *Trau-Med*, 71 S.W.3d at 696. Accordingly, we conclude that the claim was sufficient to survive a motion to dismiss on this ground.

The remaining defendants assert that Plaintiff could not establish justifiable reliance given the disclaimers contained in the offering materials for each transaction. Morgan

Keegan specifically asserts that its offering circular provided a disclosure of the very issues Plaintiff claims were hidden in the transaction process. Plaintiff responds by claiming that "whether a disclaimer matched a particular risk and negated reliance thereupon is a question of fact for the fact finder, not something to be determined on a motion to dismiss." The disclaimers and disclosures at issue were not included in a contract signed by Plaintiff evidencing an intent to hold the remaining defendants harmless for any statements that conflicted with the information contained in the offering materials. We agree that the information provided by the remaining defendants likely differed from that contained in the offering materials that spanned in excess of 100 pages. However, presuming all factual allegations to be true and giving Plaintiff the benefit of all reasonable inferences as we are constrained to do, it does not yet appear that Plaintiff "can prove no set of facts in support of [the] claim that would warrant relief." *Id.* Accordingly, we conclude that the claim was sufficient to survive a motion to dismiss on this ground.

Lastly, the remaining defendants, KBW and FTN specifically, assert that Plaintiff failed to sufficiently establish that its damages were a result of the alleged fraud instead of a simple decline in the market. KBW notes that Plaintiff enjoyed a substantial income stream from its investment for several years until the market unexpectedly declined. In the complaint, Plaintiff alleged that its losses were not caused by a simple market decline but that when the truth regarding the soundness of the investments and the inaccuracy of the rating process was revealed, Rating Agencies were forced to revise the inflated ratings, which, in turn, caused the decline in the market and Plaintiff's corresponding losses. Accordingly, Plaintiff alleged a causal connection between the challenged conduct and its injuries. Presuming all factual allegations to be true and giving Plaintiff the benefit of all reasonable inferences as we are constrained to do, it does not yet appear that Plaintiff "can prove no set of facts in support of [the] claim that would warrant relief." *Id.* With all of the above considerations in mind and without passing judgment on whether Plaintiff will be successful with these claims, we hold that the claims, as alleged, were sufficient to survive a motion to dismiss and that the trial court erred in dismissing these claims against the remaining defendants.

Constructive fraud

"Constructive fraud is essentially fraud without the element of intent." *Kincaid*, 221 S.W.3d at 39. Indeed,

> Constructive fraud is a breach of a legal or equitable duty which is deemed fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. *Cornwell v. Hodge*, C.A. No. 44, 1986 WL 5890, at *3 (Tenn. Ct. App. May 23, 1986) (citing *Bank of*

*Blount Cnty. v. Dunn*, 10 Tenn. App. 95 (1929)). Constructive frauds are acts, statements or omissions which operate as virtual frauds on individuals. *Cornwell*, 1986 WL 5890, at \*3 (citing *Maxwell v. Land Developers, Inc.*, 485 S.W.2d 869 (Tenn. Ct. App. 1972)). They concern a breach of a legal or equitable duty, with or without fraudulent intent, and entail as an attribute of fraud, conduct which reasonably can be expected to influence the conduct of others. *Cornwell*, 1986 WL 5890, at \*3 (citing *Parks v. Alexander*, 608 S.W.2d 881 (Tenn. Ct. App. 1980)).

*Id.*

While Plaintiff states its claims of constructive fraud against each defendant individually, the allegations are undoubtedly similar and in some cases, a verbatim recitation of the claim against the preceding defendant. In pertinent part, Plaintiff repeated its allegations of fraud with an added element, namely that each defendant "owed a legal and/or equitable duty to First Community to provide accurate and complete information [either orally and/or in written communications], including the [materials] prepared for the [applicable] product and distributed to First Community." Throughout the complaint, Plaintiff also alleged that it "placed trust in JP Morgan and Morgan Keegan based upon [their] reputations"; that it "believed it could rely upon representations made by FTN to a much greater extent than in a normal arm's length deal" because of its longstanding relationship that spanned decades; and that each of the remaining defendants had participated in the creation of the products at issue.

The remaining defendants assert that this claim must fail because they did not owe Plaintiff, a sophisticated investor, a legal or equitable duty. A legal duty of disclosure arises

(1) where there is a previous confidential relation between the parties;

(2) where it appears one or each of the parties expressly reposes a trust or confidence in the other;

(3) or where the contract or transaction itself is intrinsically fiduciary and calls for good faith, as in the case of insurance contracts.

*Dozier v. Hawthorne Dev. Co.*, 262 S.W.2d 705, 711 (Tenn. Ct. App. 1953); *see also Justice v. Anderson Cnty.*, 955 S.W.2d 613, 616-17 (Tenn. Ct. App. 1997) (listing the situations in which a legal duty to disclose may arise). While Plaintiff may have enjoyed a longstanding relationship with several of the remaining defendants, the record is clear that the transactions at issue were arm's length deals that were not intrinsically fiduciary in nature and that the

-17-

parties did not enjoy a fiduciary relationship. Plaintiff concedes as much but asserts that it expressly reposed trust and confidence in the remaining defendants given their reputations and superior skill, knowledge, training, and expertise. Presuming all factual allegations to be true and giving Plaintiff the benefit of all reasonable inferences as we are constrained to do, it does not yet appear that Plaintiff "can prove no set of facts in support of [the] claim that would warrant relief." *Trau-Med*, 71 S.W.3d at 696. Without passing judgment on whether Plaintiff will be successful with these claims, we hold that the claims, as alleged, were sufficient to survive a motion to dismiss. Accordingly, we hold that the trial court erred in dismissing these claims against the remaining defendants.

### Negligent misrepresentation

Persons asserting a negligent misrepresentation claim must establish:

> One, who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977); *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997).

While Plaintiff states its claims of negligent misrepresentation against each defendant individually, the allegations are undoubtedly similar and in some cases, a verbatim recitation of the claim against the preceding defendant. In pertinent part, Plaintiff alleged that each defendant, while acting

> in the course of its business, profession and employment, and in transactions in which it has a pecuniary interest . . . . supplied materially false, faulty and misleading information to First Community intended to guide First Community in its business transactions related to the purchase of the [product], and specifically to induce First Community to purchase the [product].

Plaintiff further alleged, in pertinent part, that each defendant "failed to exercise reasonable care in obtaining and communicating the information to First Community concerning the credit quality of the [product], among other things." Plaintiff reaffirmed its earlier allegation that it had reasonably and justifiably relied upon the information provided by each defendant in the offering materials and that it suffered damages as a result of the "materially false,

-18-

faulty and misleading representations and omissions." Plaintiff claimed that the misrepresentations, as previously alleged, related to the

> the risk associated with the [product], the thoroughness of the underwriting and rating processes, the adequacy of credit support/enhancement, whether the Rating Agencies had sufficiently reliable facts and sufficiently reliable models on which to assign their ratings, inadequate historical assumptions, conflicts of interest involving the Rating Agencies, and the soundness of investment in [the product] generally.

Plaintiff additionally alleged that FTN, FTB, KBW, and JP Morgan also made materially false and misleading representations regarding:

> an alleged "oversubscription" of the [product] among institutional investors[.]

The remaining defendants assert that this claim must fail because they did not owe Plaintiff, a sophisticated investor, a duty to exercise reasonable care in communicating the information relied upon by Plaintiff to purchase the products. Having already concluded that the facts, as alleged, *may* give rise to a legal and/or equitable duty to disclose relative to Plaintiff's constructive fraud claims, we conclude that the same holds true with regard to Plaintiff's negligent misrepresentation claims and the corresponding duty to exercise reasonable care in offering information intended to guide a plaintiff in his or her business transactions. Without passing judgment on whether Plaintiff will be successful with these claims, we hold that the claims, as alleged, were sufficient to survive a motion to dismiss. Accordingly, we hold that the trial court erred in dismissing these claims against the remaining defendants.

Civil conspiracy

"An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med*, 71 S.W.3d at 703. "A claim for civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). Conspiracy, standing alone, is not actionable where the underlying tort is not actionable. *Id.* at 179-80.

While Plaintiff states its claims of civil conspiracy against the specific group of defendants involved in the sale of the applicable product, the allegations are undoubtedly

similar and in some cases, a verbatim recitation of the claim against the preceding group of defendants. Specifically, Plaintiff alleged that FTN and KBW, along with others that were dismissed on jurisdictional grounds, marketed the PreTSLs in an unlawful manner; that JP Morgan and Morgan Keegan, along with others that were dismissed on jurisdictional grounds, marketed Trapeza in an unlawful manner; that Bear Stearns and SunTrust, along with others that were dismissed on jurisdictional grounds, marketed Soloso in an unlawful manner; and that Merrill Lynch, along with others that were dismissed on jurisdictional grounds, marketed RAST in an unlawful manner. In pertinent part, Plaintiff alleged that each group "agreed to act in concert to *fraudulently market* the [product]." (Emphasis added). In furtherance of that plan, the specified group

> omitted numerous material facts in connection with the issuance, rating, marketing and sale of the [product], which if disclosed to First Community and others in the market would have made the [product] unable to be sold to a large number of qualified institutional buyers, such as First Community.

Plaintiff alleged that it foreseeably relied upon the misrepresentations and material omissions because it "would not and could not have purchased [the product] if [the product] had not been represented to be investment grade, and as possessing secondary market liquidity." Plaintiff claimed that each group made the "false representations and omissions either knowing of their falsity or with recklessness as to whether the representations were false" and that it suffered damages as a result of the "fraudulent conduct, misrepresentations, and omissions."

Having concluded that Plaintiff's claim of fraud may proceed, we likewise conclude that the facts, as alleged, may support a claim for civil conspiracy to commit fraud given the nature in which the products were structured, marketed, and sold with the involvement of several companies. Accordingly, we hold that the trial court erred in dismissing these claims against the remaining defendants.

Unjust enrichment

"The doctrine of unjust enrichment is founded upon the principle that someone who receives a 'benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so.'" *CPB Mgmt., Inc. v. Everly*, 939 S.W.2d 78, 80 (Tenn. Ct. App. 1996) (quoting *Lawler v. Zapletal*, 679 S.W.2d 950, 955 (Tenn. Ct. App. 1984)). The elements of an unjust enrichment claim are:

> (1) a benefit conferred upon [the defendant] by [the plaintiff];

(2) appreciation by [the defendant] of such benefit; and

(3) acceptance of such benefit under circumstances that it would be inequitable for [the defendant] to retain the benefit without payment of the value thereof.

*Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006) (internal quotations and citations omitted).

While Plaintiff states its claims of unjust enrichment against each defendant individually, the allegations are undoubtedly similar and in some cases, a verbatim recitation of the claim against the preceding defendant. In pertinent part, Plaintiff alleged that it conferred a financial benefit upon each defendant when it invested in each product, that each defendant appreciated such benefit, and that each defendant accepted such benefit "under such circumstances that it would be inequitable and unjust for it to retain the benefit without payment of value thereof" when it "sustained massive losses" on its applicable investments in each product. Plaintiff alleged that it submitted at least $71,839,130.52 in payments to FTN and KBW, that it submitted at least $30,000,000 in payments to JP Morgan, that it submitted at least $20,000,000 in payments to Morgan Keegan, that it submitted at least $8,400,000 in payments to SunTrust, and that it submitted at least $25,421,093.75 in payments to Merrill Lynch.

The remaining defendants assert that the trial court did not err in dismissing the claims of unjust enrichment. Morgan Keegan individually asserts that the trial court did not err in dismissing the unjust enrichment claim against it because Plaintiff never conferred a direct benefit upon it in the form of payments. Morgan Keegan asserts that even if it received a small benefit from Plaintiff's purchase of Trapeza, Plaintiff must first exhaust its remedies against those that received a direct benefit from the purchase and the eventual resale of the product, namely JP Morgan, the seller, or FTN, the buyer. Plaintiff responds that the trial court erred in dismissing its alternative claim for relief at this stage of the proceeding when the unjust enrichment claims were adequately pled. We agree with Plaintiff. While it may be difficult to establish the exact monetary benefit conferred upon each defendant given the number of companies involved in each transaction and the relative roles played by each company, it does not yet appear that Plaintiff "can prove no set of facts in support of [the] claim that would warrant relief." *Trau-Med*, 71 S.W.3d at 696. Without passing judgment on whether Plaintiff will be successful with these unjust enrichment claims, we hold that the claims, as alleged, were sufficient to survive a motion to dismiss. Accordingly, we hold that the trial court erred in dismissing these claims against the remaining defendants.

Tennessee Securities Act

The TSA provides, in pertinent part, that

(a) It is unlawful for any person, *in connection* with the offer, sale or purchase of any security in this state, *directly or indirectly*, to:

> (1) Employ any device, scheme, or artifice to defraud;

> (2) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

> (3) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Tenn. Code Ann. § 48-1-121(a) (emphasis added).

While Plaintiff specifically asserts that each defendant violated the TSA, the allegations are undoubtedly similar and in some cases, a verbatim recitation of the claim against the preceding defendant. In pertinent part, Plaintiff alleged that each defendant made materially false and misleading representations and omissions regarding:

> the risk associated with the [product], the thoroughness of the underwriting and rating processes, the adequacy of credit support/enhancement, whether the Rating Agencies had sufficiently reliable facts and sufficiently reliable models on which to assign their ratings, inadequate historical assumptions, conflicts of interest involving the Rating Agencies, and the soundness of investment in [the product] generally.

Plaintiff additionally alleged that FTN, FTB, KBW, JP Morgan, and Morgan Keegan also made materially false and misleading representations regarding:

> an alleged "oversubscription" of the [product] among institutional investors[.]

Plaintiff continued that each defendant "intentionally made the false representations and omissions" either orally and/or in written communications, namely the materials prepared and distributed with each product. Plaintiff also alleged that

[Each defendant] made the false representations and omissions either knowing of their falsity or with recklessness as to whether the representations were false.

Upon information and belief, with respect to the credit ratings, [each defendant] and the Rating Agencies worked together to structure the tranches and assign them credit ratings.

[Each defendant] obtained the ratings for the [product] from the Rating Agencies and then provided the misleading investment grade credit ratings to First Community.

The ratings constituted a representation of fact that [each defendant] had provided sufficiently reliable facts to provide those ratings.

To the extent that [each defendant] may claim the ratings are opinions, the ratings were nonetheless fraudulent because [each defendant] did not genuinely and reasonably believe them and they were without actual basis in fact.

[Each defendant] had the motive and opportunity to commit fraud, as pled with particularity above.

The complaint goes on to allege that Plaintiff suffered damages as a result of the "false and fraudulent conduct, misrepresentations, and omissions" and that it was "entitled to recover from [each defendant] the difference between the price at which [it] purchased the securities and the market value at the time of sale, interest at the legal rate and reasonable attorneys' fees" pursuant to Tennessee Code Annotated section 48-2-122.

Remaining defendants assert that the trial court did not err in dismissing the TSA claims for the same reasons that the common law tort claims were properly dismissed for failure to state a claim, namely Plaintiff failed to plead an actionable misrepresentation, Plaintiff failed to allege that the remaining defendants acted willfully, and Plaintiff failed to establish that the alleged misrepresentations and omissions were material. Having already concluded that the trial court erred in dismissing the common law tort claims at this stage of the proceedings, we hold that these arguments are without merit.

KBW and Morgan Keegan assert that the TSA claim must fail because they never made any representations as a seller of the product. While KBW and Morgan Keegan may not have officially served as the seller of the product, they were intricately involved in the

-23-

creation of the product and the issuing entities. The statute allows for recovery from those who are "directly or indirectly" involved with the sale. Tenn. Code Ann. § 48-1-121(a). Presuming all factual allegations to be true and giving Plaintiff the benefit of all reasonable inferences as we are constrained to do, it does not yet appear that Plaintiff "can prove no set of facts in support of [the] claim that would warrant relief" from KBW and Morgan Keegan given their involvement with the transactions at issue. *Trau-Med*, 71 S.W.3d at 696.

JP Morgan, SunTrust, and Morgan Keegan further assert that any TSA claim related to the Trapeza and Soloso transactions must fail because Plaintiff did not allege that

> any activity related to [its] purchases of the Trapeza and Soloso notes . . . occurred in Tennessee, that any selling or marketing activities occurred in Tennessee, that [Plaintiff] sent funds to Tennessee or even that any documents related to the purchase of the notes were executed in Tennessee.

According to the complaint, Plaintiff alleged that Soloso was marketed by Anna White from Memphis, Tennessee and that SunTrust, a Tennessee corporation, was intricately involved in the marketing and sale of Soloso. Relative to the Trapeza transactions, Plaintiff also alleged that the misrepresentations and omissions were made in connection with the sale of a security in Tennessee and that Morgan Keegan, a Tennessee corporation, was intricately involved in the marketing and sale of Trapeza. Presuming all factual allegations to be true and giving Plaintiff the benefit of all reasonable inferences as we are constrained to do, it does not yet appear that Plaintiff "can prove no set of facts in support of [the] claim that would warrant relief." *Trau-Med*, 71 S.W.3d at 696. Without passing judgment on whether Plaintiff will be successful with these claims, we hold that the claims, as alleged, were sufficient to survive a motion to dismiss. Accordingly, we hold that the trial court erred in dismissing these claims against the remaining defendants.

*Successor liability*

BOA individually alleged that Plaintiff failed to state a claim upon which relief could be granted because Plaintiff treated it as if it were the same entity as Merrill Lynch without pleading facts to support the application of successor liability. In the complaint, Plaintiff alleged that BOA purchased Merrill Lynch "in a de facto merger" and that BOA adopted the marketing name of Bank of America Merrill Lynch. Plaintiff continued,

> The "Bank of America Merrill Lynch" website identifies "Bank of America Merrill Lynch" as the "marketing name" for certain Bank of America business, and indicates that certain services are performed by "investment banking affiliates of Bank of America Corporation," including Merrill Lynch.

-24-

In Tennessee, a successor may be liable for the debts of its predecessor when there is an

> express or implied undertaking of the liabilities in the form of (1) an express or implied assumption of such debts; (2) the transaction amounting to a consolidation or merger of the seller and purchaser; (3) the purchaser being a mere continuation of the seller[;] or (4) a fraudulent transaction.

*Gas Plus of Anderson Cnty., Inc. v. Arowood*, No. 03A01-9311-CH-00406, 1994 WL 465797, at *3 (Tenn. Ct. App. Aug. 30, 1994) (citations omitted); *see also Hopewell Baptist Church v. Se. Window Mfg. Co., LLC*, No. E2000-02699-COA-R3-CV, 2001 WL 708850, at *4 (Tenn. Ct. App. June 25, 2001) (applying the traditional rule of successor liability discussed in *Arowood*). Presuming all factual allegations to be true and giving Plaintiff the benefit of all reasonable inferences as we are constrained to do, it does not yet appear that Plaintiff "can prove no set of facts in support of [the] claim that would warrant relief." *Trau-Med*, 71 S.W.3d at 696. With all of the above considerations in mind and without passing judgment on whether Plaintiff will be successful on the issue of successor liability, we hold that the complaint was sufficient to survive a motion to dismiss on this ground.

## V. CONCLUSION

The judgment of the trial court is reversed as to the court's ruling that Plaintiff failed to state a claim against First Tennessee Bank, N.A. doing business as FTN Capital Markets; FTN Financial Securities Corporation; Keefe, Bruyette & Woods, Inc.; SunTrust Robinson Humphrey, Inc. formally known as SunTrust Capital Markets, Inc.; Morgan Keegan & Company, Inc.; J.P. Morgan Securities, LLC, individually and as successor in interest to Bear Stearns & Company, Inc.; and Bank of America Corporation as successor in interest to Merrill Lynch, Pierce, Fenner & Smith, Inc.

The case is remanded for further proceedings consistent with this opinion. Costs of the appeal are taxed equally to the appellees, First Tennessee Bank, N.A. doing business as FTN Capital Markets; FTN Financial Securities Corporation; Keefe, Bruyette & Woods, Inc.; SunTrust Robinson Humphrey, Inc. formally known as SunTrust Capital Markets, Inc.; Morgan Keegan & Company, Inc.; J.P. Morgan Securities, LLC, individually and as successor in interest to Bear Stearns & Company, Inc.; and Bank of America Corporation as successor in interest to Merrill Lynch, Pierce, Fenner & Smith, Inc.

_____
JOHN W. McCLARTY, JUDGE

-25-